*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEAGUE OF WOMEN VOTERS OF MICHIGAN,
MICHIGANDERS FOR FAIR AND
TRANSPARENT ELECTIONS, HENRY MAYERS,
VALERIYA EPSHTEYN, and BARRY RUBIN,

        Plaintiffs-Appellants,

v

SECRETARY OF STATE,

        Defendant-Appellee.

FOR PUBLICATION
January 27, 2020

No. 350938
Court of Claims
LC No. 19-000084-MM

SENATE and HOUSE OF REPRESENTATIVES,

        Plaintiffs-Appellants,

v

SECRETARY OF STATE,

        Defendant-Appellee.

No. 351073
Court of Claims
LC No. 19-000092-MZ

Before: SERVITTO, P.J., and BOONSTRA and GADOLA, JJ.

BOONSTRA, J. (*concurring in part and dissenting in part*).

For the reasons that follow, I concur with the majority opinion in concluding that (1) the 15% geographic limit set forth in MCL 168.471, and (2) the affidavit requirement of MCL 168.482a(1),(2), are unconstitutional. I respectfully dissent, however, from (1) the majority's decision to affirm the denial of standing to the Legislature in this case, and would instead, at a minimum, exercise our discretion to fully entertain the Legislature's arguments in this matter, and (2) its determination that the "check box" requirement of MCL 168.482 is unconstitutional. I further concur with the majority that the unconstitutional provisions are severable from the remainder of 2018 PA 608.

## I. STANDING

Although the majority acknowledges that the Senate and House of Representatives (the Legislature) was permitted to file briefs both in the Court of Claims and in this Court, it nonetheless proceeds to hold that the Legislature lacks standing. I disagree with its decision to affirm the denial of standing to the Legislature in this case, and would instead, at a minimum, exercise our discretion to fully entertain the Legislature's arguments in this matter.

To properly address the standing issue, we must first consider the evolution of Michigan law on the subject. In *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010), our Supreme Court overruled its earlier decisions in *Lee v. Macomb Co. Bd. of Comm'rs,* 464 Mich. 726, 629 N.W.2d 900 (2001), and its progeny, and held that "Michigan standing jurisprudence should be restored to a limited, prudential doctrine that is consistent with Michigan's long-standing historical approach to standing." *Lansing Sch Ed Ass'n*, 487 Mich at 372. It rejected the determination of those earlier cases that standing was a "constitutional requirement," and that "a lack of standing equated to the lack of a controversy necessary for the invocation of the judicial power under the Michigan Constitution." *Id*. at 363-364. It noted that "before *Lee,* from the [standing] doctrine's inception this Court has at times addressed a case's merits despite concluding that the parties lacked standing." *Id*. at 365.

The Court in *Lansing Sch Ed Ass'n* thus jettisoned the *Lee* Court's approach, and held that "Michigan's standing jurisprudence should be restored to an approach that is consistent with the limited, prudential approach used historically." *Id*. at 355. In describing that historical approach, the Court noted that "[s]tanding was a prudential limit, which is to say that the court's decision to invoke it was 'one of discretion and not of law.' " *Id*. (citations omitted). The Court thus concluded that under the restored, limited, prudential approach, "a litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment." *Id*. at 372. Moreover,

> Where a cause of action is not provided at law, then a court should, *in its discretion*, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Id*. (emphasis added).]

In sum, the restoration of the limited, prudential approach to standing in *Lansing Sch Ed Ass'n* made it *easier* to establish standing, or at least transformed the previously-existing *requirement* of standing into a *discretionary* consideration for the courts. I would exercise our discretion in this case so as to allow the Legislature's claim and to fully consider its arguments.

The Supreme Court in *Lansing Sch Ed Ass'n* also noted that "[t]he purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to 'ensure sincere and vigorous advocacy.' " *Id*. at 355 (citation omitted). There can be little doubt that the Legislature satisfies that test in this case. The real question (apart from the discretionary consideration of whether to invoke the standing doctrine at all) is whether the Legislature also

has "a special injury or right or substantial interest that would be detrimentally affected in a manner different from the citizenry at large." *Id*. at 359.

The circumstances of this case are unique. The duly elected Legislature enacted 2018 PA 608, and it was signed into law. The Secretary of State (Secretary) subsequently declined to enforce aspects of that law, premised on the Attorney General's opinion that they were unconstitutional. The Legislature posits that it possesses a "substantial interest" in regulating elections in Michigan that is distinct from the general public, because it has a constitutional duty to "regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting." Const 1963, art 2, § 4 and art 4, § 1. Whether the Legislature is correct on the merits, i.e., whether its constitutional duty in that regard has been impaired, is not the question. That is because "the standing inquiry [is] distinct from the merits of a case." Rather, the question is whether the Legislature has a "substantial interest that would be detrimentally affected in a manner different from the citizenry at large." *Lansing Sch Ed Ass'n*, 487 Mich at 372.

The majority acknowledges that our state appellate courts have not addressed whether the Legislature as a whole has standing in circumstances such as this. It relies instead on *Dodak v State Admin Bd*, 441 Mich 547; 495 NW2d 539 (1993), in which four individual legislators challenged the authority of the State Administrative Board, under MCL 17.3, to transfer funds between state departments. The issue was one of statutory interpretation, not of constitutional dimension. In concluding that only one of the four individual legislator-plaintiffs had standing, the Court distinguished his interest from that of the others by noting that he was "suing to maintain the effectiveness of his vote under the Management and Budget Act." Similarly, in my judgment, the Legislature here is suing to maintain the effectiveness of its collective votes in enacting 2018 PA 608, which the Secretary is now declining (at least in part) to enforce.

I note that the Secretary argues that this is insufficient to confer standing, stating:

> Just as "a generalized grievance that the law is not being followed" is not a sufficient injury to confer standing on an individual legislator, *Dodak*, 441 Mich at 556, neither is it a sufficient "institutional injury" to support standing of the Senate and House as an institutional body. See, e.g, *Virginia House of Delegates v Bethune-Hill*, ___ US ___, 139 S Ct 1945, 1953 (2019) (discussing legislative standing to defend constitutionality of statutes). [Brief of Appellee Secretary of State Jocelyn Benson in Docket No. 351073 at 10.]

However, in "discussing legislative standing to defend constitutionality of statutes" (as the Secretary describes the case) the United States Supreme Court in *Virginia House of Delegates* held only that "a *single House of a bicameral legislature* lacks capacity to assert interests belonging to the legislature as a whole." *Id*., 139 S Ct at 1953 (emphasis added). Indeed, the Court distinguished that situation (in which only a single House of a bicameral legislature brought suit) from that in *Arizona State Legislature v Arizona Independent Redistricting Comm'n*, 576 US ___; 135 S Ct 2652; 192 L Ed 2d 704 (2015), "in which the Court recognized the standing of the Arizona House and Senate—*acting together*—to challenge a referendum that gave redistricting authority exclusively to an independent commission, thereby allegedly usurping the legislature's authority under the Federal Constitution over congressional

redistricting." *Virginia House of Delegates*, 139 S Ct at 1953. In this case, of course, it is both houses of the bicameral Michigan legislature, acting together, that have brought suit. Notwithstanding the Secretary's reliance upon it, *Virginia House of Delegates* therefore actually *supports* the Legislature's claim of standing in this case.

Moreover, I find little solace in the majority's observation that "the Court of Claims analyzed the Attorney General's legal conclusions, this Court scrutinized those conclusions, and presumably, our Supreme Court will also consider the legal conclusions in the Attorney General's opinion." "Under our adversarial system, each party bears the responsibility for ensuring that its positions are vigorously and properly advocated," and " 'parties frame the issues and arguments' for the trial court." *Barnard Manufacturing Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 382–83; 775 NW2d 618 (2009) (citations omitted). Courts do not function both as advocate and adjudicator. Yet, apart from the Legislature, there would appear to be no one to argue in opposition to the position taken jointly by plaintiffs (in Docket 350938), the Secretary (defendant in both dockets) and the Attorney General (who is representing the Secretary in both dockets, premised on the Attorney General's own legal opinion),[1] particularly within the attenuated time frame within which these issues must be decided in advance of the procedural run-up to 2020 elections. This, to me, is troubling, and it counsels toward affording standing to the Legislature in this circumstance or, at a minimum, toward exercising our discretion under the restored, limited, prudential approach to standing of *Lansing Sch Ed Ass'n*, so as to fully entertain the Legislature's arguments in this matter.

For these reasons, I dissent from the majority's decision to affirm the denial of standing to the Legislature in this case, and would instead, at a minimum, exercise our discretion to fully entertain the Legislature's arguments in this matter.

## II. CONSTITUTIONALITY OF 2018 PA 608

### A. 15% GEOGRAPHIC REQUIREMENT

I concur in the majority's determination that the provision set forth in MCL 168.471 imposing a 15% geographic limit is unconstitutional. Put simply, in order to interpret our Constitution as a cohesive whole, the Legislature's constitutional authority must be read in a

---

[1] According to the Legislature, this case represents an "incredibly rare" circumstance in which "the Attorney General [] refuse[s] to defend a statute and instead [] affirmatively attack[s] it. Historically, even when the Attorney General disagreed with a policy embodied in the statute, the Office of the Attorney General would set up a conflict wall and appoint assistant attorneys general to argue both sides of the dispute. In that way, there were always attorneys defending the Legislature's enactment." [Reply Brief of Appellants Michigan Senate and Michigan House of Representatives in Docket 351073 at 1.] See also, MCL 14.28 ("the attorney general shall also, when requested by . . . either branch of the legislature, . . . intervene in and appear for the people of this state in any [] court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested."). Had the Attorney General followed that procedure in this case, the standing issue would be moot, and much angst and gnashing of teeth could have been avoided.

manner that is consistent with other constitutional provisions and limitations. *AFSCME Council 25 v State Employees' Retirement Sys*, 294 Mich App 1, 9; 818 NW2d 337 (2011). Specifically, Const. 1963, art 2, § 9 states in part:

> To invoke the initiative or referendum, petitions signed by a number of registered electors, not less than *eight percent for initiative* and *five percent for referendum* of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected shall be required. [*Id*. (emphasis added.)]

Although Const. 1963, art 2, § 9 expressly imposes numerical requirements for petition signatures required for initiative or referendum, it says nothing about limiting the percentages of those petition signatures per congressional district, or otherwise. Indeed, a geographic limitation proposal was presented to the 1961 constitutional convention and, wisely or not, it was rejected. Although the Legislature has constitutional authority and duties to "enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting," Const. 1963, art 2, § 4(2), that authority is limited by its own terms. *Id*. ("Except as otherwise provided in this constitution or in the constitution or laws of the United States . . . ."). It therefore remains subject to the limitations that are inherent in Const. 1963, art 2, § 9.

I conclude that where, as here, the constitution speaks to the initiative and referendum process and provides specific numerical percentages for the petition signatures required for initiative or referendum, and where the convention that adopted that constitution specifically rejected a proposal for additional requirements akin to the 15% limitation of MCL 168.471, such a proposal may only be accomplished by way of constitutional amendment, not by legislation. Consequently, I concur with the majority that the 15% geographic limit of MCL 168.471 is unconstitutional.

## B. CHECK BOX REQUIREMENT

I disagree with the majority's treatment of the "check box" requirement of MCL 168.482, and therefore dissent from that portion of the majority's opinion. I would instead hold that requirement to be constitutional.

MCL 168.482 sets forth various requirements for the size, form, and content of a petition for constitutional amendment, initiative, or referendum, and pertinent to this appeal provides in part:

> (7) Each petition under this section must provide at the top of the page check boxes and statements printed in 12-point type to clearly indicate whether the circulator of the petition is a paid signature gatherer or a volunteer signature gatherer.
>
> (8) Each petition under this section must clearly indicate below the statement required under subsection (7) and be printed in 12-point type that if the petition circulator does not comply with all of the requirements of this act for petition

circulators, any signature obtained by that petition circulator on that petition is invalid and will not be counted. [MCL 168.482.]

I am unpersuaded that the "check box" requirement is unconstitutional. This is so particularly because the requirement applies, even-handedly, to both paid and volunteer circulators. And I do not find the cases relied upon by the majority compelling in the current context.

In *Meyer v Grant*, 486 US 414; 108 S Ct 1886, 100 L Ed 2d 425 (1988), the United States Supreme Court considered a Colorado statute that prohibited the payment of circulators of initiative petitions, and concluded that the blanket prohibition unconstitutionally limited political expression. Nothing akin to that exists in this case.

In *McIntyre v Ohio Elections Com'n*, 514 US 334; 115 S Ct 1511; 131 L Ed 2d 426 (1995), the Supreme Court held unconstitutional an Ohio statute that prohibited the distribution of anonymous campaign literature; in other words, the statute required that campaign literature contain the name and address of the person or campaign official issuing the literature. This case presents no such requirement.

Similarly inapt is the majority's citation to *Buckley v Am Constitutional Law Found, Inc*, 525 US 182; 119 S Ct 636; 142 L Ed 2d 599 (1999). In *Buckley*, the Supreme Court struck down a Colorado statute that required circulators to wear identification badges bearing the circulator's name, concluding that the requirement "discourages participation in the petition process by forcing name identification without sufficient cause." *Id*. at 200. As the majority acknowledges, however, the Court expressly declined to address "whether the additional requirements—that the badge disclose the circulator's paid or volunteer status, and if paid, by whom—'would pass constitutional muster standing alone.' " *Id*. (citation omitted).

In this case, by contrast, 2018 PA 608 contains no requirement that a petition circulator disclose his or her identity. Indeed, it contains only one portion of the "additional requirements" whose constitutionality the Court in *Buckley* declined to address. *Buckley* does not support a finding of unconstitutionality here.

Finally, the majority cites *United States v Playboy Entmt Group, Inc*, 529 US 803, 816–17; 120 S Ct 1878; 146 L Ed 2d 865 (2000), in which the Supreme Court held unconstitutional a statutory content-based restriction on cable television transmissions. No content-based speech restriction is at issue in this case.

In sum, the "check box" requirement of MCL 168.482 applies equally to paid and volunteer circulators. It does not compel circulators to provide their name (or address), prohibit any component of speech, or restrict the content of speech. Indeed, the requirement would seem to promote full information and transparency with prospective voters and petition signers. The Legislature additionally cites to the "small burden on First Amendment activity" imposed by the check-box requirement, "coupled with an important and well-established governmental interest to which the disclosure requirement is substantially related," i.e., deterring election fraud. *Libertarian Party of Ohio v Husted*, 751 F3d 403, 418 (CA 6 2014) (affirming the denial of a preliminary injunction of an Ohio statute that required circulators to provide the names and

addresses of their employers) (which the "check box" requirement in this case does not even require).[2] I perceive no basis for assuming that it would induce "heat of the moment' harassment. I would hold it to be constitutional. See *Toll Northville Ltd*, 480 Mich 6, 11; 743 NW2d 902 (2008) ("Statutes are presumed constitutional unless the unconstitutionality is clearly apparent.")

## C. AFFIDAVIT REQUIREMENT

I join the majority, however, in concluding that the affidavit requirement of MCL 168.482a(1),(2) does not survive constitutional scrutiny. Unlike the "check box" requirement, the affidavit requirement is targeted only toward paid circulators, and therefore is not evenly applied. It mandates that the required affidavits be filed before petition signatures are gathered. And it disenfranchises voters who signed a petition without the required pre-circulation affidavit being filed—but, again, only for petitions circulated by paid circulators. While an affidavit requirement that is more even-handed and that imposes different timing requirements for the filing of the affidavits might survive constitutional muster, I conclude that this one does not.

## III. CONCLUSION

For all of these reasons, I concur with the majority opinion in concluding that (1) the 15% geographic limit set forth in MCL 168.471, and (2) the affidavit requirement of MCL 168.482a(1),(2), are unconstitutional. I respectfully dissent, however, from (1) the majority's decision to affirm the denial of standing to the Legislature in this case, and would instead, at a minimum, exercise our discretion to fully entertain the Legislature's arguments in this matter, and (2) its determination that the "check box" requirement of MCL 168.482 is unconstitutional. I further concur with the majority that the unconstitutional provisions are severable from the remainder of 2018 PA 608.

/s/ Mark T. Boonstra

---

[2] The Sixth Circuit in *Husted* distinguished its earlier precedent in *Citizens for Tax Reform v Deters*, 518 F3d 375 (2008) (which had struck down a statutory prohibition on paying circulators on a per-signature or per-volume basis), finding "no convincing evidence that the employer disclosure requirement at issue in this case would significantly diminish petition circulation, if at all." *Husted*, 751 F3d at 420.